# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. CR05-0078 |
| vs. | REPORT AND RECOMMENDATION |
| MARILYN HENDERSON, | |
| Defendant. | |

_____

This matter comes before the court pursuant to Defendant Marilyn Henderson's October 17, 2005 motion to suppress evidence (docket number 16). The court held an evidentiary hearing on this motion on November 9, 2005, at which the defendant was present and represented by Ray Scheetz. The government was represented by Assistant United States Attorney C.J. Williams. It is recommended that the defendant's motion to suppress be denied.

The defendant, Marilyn Henderson, is charged in a two-count indictment filed September 8, 2005 (docket number 1). Count 1 charges the defendant with knowing possession of a firearm, specifically a Marlin .22 caliber rifle, after having been convicted of a crime punishable by imprisonment for a term exceeding one year. Count 2 charges the defendant with knowing possession of a firearm while an unlawful user of controlled substances, namely marijuana. The indictment also contains a forfeiture allegation concerning the firearm.

The motion to suppress arises out of a search warrant for the defendant's residence obtained by Officer Chip Joecken of the Cedar Rapids Police Department on October 1, 2004. During execution of the search warrant, on October 7, 2005, officers discovered the firearm that is the subject of the indictment, marijuana, and drug use and distribution

paraphernalia. The defendant moves to suppress all evidence obtained during the execution of the search warrant because the judge who issued the search warrant failed to sign the portion of the search warrant application to indicate that Officer Joecken had been placed under oath before presenting the affidavit in support of probable cause. The government resists, arguing that Officer Joecken had properly been sworn despite the judge's failure to indicate so in writing, and that even assuming that Officer Joecken had not been sworn, the search warrant should nevertheless be saved by the <u>Leon</u> good faith exception to the exclusionary rule.

## Findings of Fact

On October 1, 2004, Officer Joecken drafted a warrant application and proposed warrant to search the defendant's residence for:

> [a] controlled substance as defined in Chapter 124 of the Iowa Code, including but not limited to crack cocaine as well as any packaging materials, cash, computer hardware and software, removable computer storage and/or memory devices, documents, paraphernalia, photographs, cell phones, cell phone subscriber information, and cell phone tolls associated in or with the use, sale, manufacturing or distribution of controlled substances. A urine sample from all known residents to determine a presence of controlled substance.

Officer Joecken and Assistant Linn County Attorney Jerry Vandersanden appeared before Judge Fae Hoover-Grinde, a District Associate Judge with the Sixth Judicial District of the State of Iowa, to apply for the search warrant for the defendant's residence. Judge Hoover-Grinde placed Officer Joecken under oath before he presented any evidence by way of testimony or affidavit.[1] After considering the warrant application and affidavit, and

---

[1] Judge Hoover-Grinde testified that based on advice she received from other judges, as well as her observations of judges' practices concerning search warrants while in practice as an attorney, her standard procedure concerning warrants is to place a warrant affiant under oath prior to considering any evidence, whether verbal or in writing. It is her practice to first place the affiant under oath as to what they will be testifying to, and

(continued...)

being satisfied that probable cause existed, Judge Hoover-Grinde returned the warrant application to Officer Joecken and Mr. Vandersanden for their signatures. Judge Hoover-Grinde then signed the warrant, and signed the warrant application in one of the two places designated for her signature.[2]

Judge Hoover-Grinde has issued approximately 15-20 search warrants since she was appointed to her position in January, 2004. She cannot recall any instance in which she has deviated from her procedure of swearing in an affiant before allowing them to present any evidence, by way of testimony or affidavit, in support of a warrant. Based on her procedure and the fact that in this case she signed all of the other places in the warrant application and warrant designated for her signature, Judge Hoover-Grinde believes that her failure to sign in acknowledgment that Officer Joecken had been placed under oath was inadvertent and merely an oversight on her part, and did not mean that there was something wrong with the affidavit or that she had failed to place Officer Joecken under oath. From her testimony, the court is satisfied that she followed her standard practice in this case.

_____

[1](...continued)
then additionally ask the affiant to swear to the veracity of the contents of the affidavit being presented to the court. Judge Hoover-Grinde testified that "that's how I've always done it," and "that's been my procedure since I've been appointed to this position."

[2] Although neither Judge Hoover-Grinde nor Officer Joecken have a specific recollection of the search warrant application and warrant at issue in this case, Judge Hoover-Grinde testified that her procedure requires the affiant to sign the warrant application after she reviews it and then she signs the application and warrant. The only place on the warrant application that Judge Hoover-Grinde failed to sign was the jurat designated for her signature acknowledging:

Subscribed and sworn to before me by Chip Joecken on this 1st day of October, 2004.

_____
Magistrate/Judge

Officer Joecken became a narcotics officer approximately four years ago, and within that time he has been involved in obtaining as many as 10 search warrants per month. To his recollection, Officer Joecken has never been allowed to proffer evidence in support of a warrant before being sworn.

Officer Joecken took the original search warrant and application with him when he left Judge Hoover-Grinde's chambers. The search warrant and application were in Officer Joecken's custody from the time that the warrant was issued on October 1, 2004, at least until the search warrant was executed on October 7, 2004. During the execution of the warrant at the defendant's residence, officers located marijuana, drug use and distribution paraphernalia, and a Marlin .22 caliber rifle.

## Conclusions of Law

The defendant moves to suppress evidence obtained as a result of the search made pursuant to the October 1, 2004 search warrant. The defendant contends that the search warrant suffered a "fatal defect" when Judge Hoover-Grinde failed to certify on the affidavit that Officer Joecken had been sworn when he presented the affidavit in support of probable cause. The defendant contends that the judge's failure to acknowledge by signature on the search warrant application that Officer Joecken had been placed under oath constitutes a Fourth Amendment violation.

While the defendant concedes that current precedent from the Eighth Circuit Court of Appeals supports the government's argument that Judge Hoover-Grinde's failure to certify that Officer Joecken had been sworn does not render the search warrant invalid, he argues that current Eighth Circuit Court of Appeals cases are of questionable authority on the issue since the Supreme Court decided Groh v. Ramirez, 540 U.S. --- (2004). In Groh, the search warrant failed to list any of the items to be seized. The defendant sued the affiant officer pursuant to 42 U.S.C. § 1983 for searching his residence with a defective warrant, and the affiant officer claimed immunity based on the fact that the warrant had been approved by a magistrate and he had therefore acted in reasonable

reliance on the warrant. The <u>Groh</u> Court determined that the affiant officer was not immune from suit because the warrant failed to satisfy the Fourth Amendment's particularity requirement and was therefore unreasonable as a matter of law. The Court further determined that the affiant officer was partially responsible for the deficiency because he failed to specify the items to be seized in the warrant. The affiant officer's failure to do so, according to the <u>Groh</u> Court, rendered the warrant "patently defective." The defendant asserts that like <u>Groh</u>, the search warrant in this case should not be saved under the <u>Leon</u> good faith exception.

The defendant further argues that <u>United States v. Hessman</u>, cited by the government, is distinguishable from this case. Specifically, the defendant argues that the Eighth Circuit Court of Appeals, in <u>Hessman</u>, based its holding, in part, on the fact of exigent circumstances. The defendant argues that no such exigency existed in this case, as evidenced by the fact that Officer Joecken waited for seven days to execute the search warrant.[3] Finally, the defendant argues that this is not a case in which it is appropriate to place blame for the deficiency in the warrant application solely on the issuing judge, because Officer Joecken had the warrant application in his possession for seven days and admittedly never performed even a cursory inspection of the warrant application after the warrant was issued to make certain that it was properly executed.

The defendant's motion to suppress should be denied. First, the fact that Judge Hoover-Grinde failed to acknowledge by her signature that Officer Joecken had been placed under oath does not establish that Officer Joecken was not in fact placed under oath. In fact, the evidence presented at the suppression hearing demonstrates that Officer Joecken was sworn before offering the affidavit in support of probable cause for the warrant. Officer Joecken testified that he has always been placed under oath prior to giving

---

[3] As the court indicated at the conclusion of the evidentiary hearing, the court rejects the defendant's argument that the holding of <u>Hessman</u> should only apply in cases in which some sort of exigency for issuance and execution of a warrant exists. There is nothing in <u>Hessman</u> which would support such a narrow interpretation.

testimony or submitting an affidavit in pursuit of a warrant. Judge Hoover-Grinde testified that she cannot recall ever deviating from her procedure of placing an affiant under oath prior to considering testimony or an affidavit in support of probable cause. It is the very first thing she routinely does when asked to consider issuing a warrant. As the government correctly pointed out in its resistance to the defendant's motion to suppress, the Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation,"[4] it does not guarantee that the magistrate record that the affiant was placed under oath. Based on the evidence presented at the evidentiary hearing, the court is satisfied that Officer Joecken was in fact placed under oath prior to testifying before Judge Hoover-Grinde and prior Judge Hoover-Grinde's consideration of his affidavit. Accordingly, the court finds that the search warrant was valid.

Second, even assuming that Officer Joecken had not been placed under oath, the court finds that the search warrant is saved by the <u>Leon</u> good faith exception to the exclusionary rule. Pursuant to <u>United States v. Leon</u>, 468 U.S. 897 (1984), in the absence of an allegation that the issuing judge abandoned a neutral and detached role, suppression is appropriate only if the affiant was dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. In <u>Leon</u>, the United States Supreme Court noted the strong preference for search warrants and stated that in a doubtful or marginal case a search under a warrant may be sustainable where without one, it would fall. <u>Leon</u>, <u>supra</u>, at 914.

> Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. . . . Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable,

---

[4] U.S. CONST. amend. IV.

. . . and it is clear in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Leon, supra, at 922-23.

Pursuant to Leon, suppression remains an appropriate remedy: (1) where the magistrate issuing a warrant was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, Franks v. Delaware, 438 U.S. 154 (1978); (2) where the issuing magistrate wholly abandons the judicial role and becomes a "rubber stamp" for the government; (3) where the officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. In Leon, the remedy of suppression was not ordered despite the fact that the affidavit in that case did not establish probable cause to search the residence in question. Further, the information was fatally stale and failed to properly establish the informant's credibility. The standard announced in Leon is an objective standard.

The Eighth Circuit Court of Appeals held, in United States v. Hessman, 369 F.3d 1016 (8th Cir. 2004), that the Leon good faith exception applied in circumstances very similar to this case. In Hessman, a search warrant was issued by telephone and facsimile. The affiant officer had not signed the warrant application, and the magistrate did not place the affiant officer under oath or talk to the affiant officer about the facts supporting the application before signing the warrant and faxing it back to the affiant officer for execution. The Eighth Circuit Court of Appeals held that the Leon good faith exception to the exclusionary rule applied. The court noted:

> [T]he Fourth Amendment exclusionary rule is not to be 'applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the

issuance of a search warrant that is ultimately found to be
invalid.

Hessman, 369 F.3d at 1020 (quoting United States v. Taylor, 119 F.3d 625,629 (8th Cir.
1997) (citing Leon, 468 U.S. at 905).   The court went on to explain that "[t]he
exclusionary rule [set forth in Leon] is designed to deter police misconduct rather than to
punish the errors of judges and magistrates," and should not be used to "exclude evidence
when an officer's reliance on a technically sufficient warrant is objectively reasonable."
Hessman, 369 F.3d at 1020 (citing Leon, 468 U.S. at 916, 922).   In Hessman, the court
noted that in a previous case, United States v. Thomas, the court had applied the Leon
good faith exception "even when a facially obvious error exists on a warrant," explaining
that because the error was not the officer's error, the officer had reasonably relied upon
the warrant.   See Hessman, 369 F.3d at 1021 (citing United States v. Thomas, 263 F.3d
805, 808-09 (8th Cir. 2001).  The court, in Hessman,  explained that the fact of a "facially
obvious error," committed by the issuing judge or magistrate, does not "change the fact
that the issuing judicial officer bears the primary responsibility for ensuring the accuracy
of the warrant as the final reviewing authority."  Id. (citing Thomas, 263 F.3d 809).  The
court, in Hessman, also based its holding in part on the Supreme Court's 1984 ruling in
Massachusetts v. Sheppard, 468 U.S. 981 (1984).   The Hessman court noted that in
Sheppard, the Supreme Court observed, "'we refuse to rule that an officer is required to
disbelieve a judge who has just advised him . . . that the warrant he possesses authorizes
him to conduct the search he has requested.'"  Hessman, 369 F.3d at 1021 (quoting
Sheppard, 468 U.S. 989-90).

In regard to the defendants' argument that Officer Joecken was himself responsible
for the deficiency in the warrant application because he failed to review it after Judge
Hoover-Grinde issued it, the court notes that there was no reason for Officer Joecken to
review the warrant application and warrant once they were returned to him by Judge
Hoover-Grinde.  See Hessman, 369 F.3d at 1021 (quoting Sheppard, 468 U.S. at 989-90).
Moreover, there is no indication that Officer Joecken was in any way cavalier about

securing a valid search warrant, as evidenced by the fact that he sought to have Mr. Vandersanden, a prosecutor, review and support his application for the search warrant. <u>See</u> <u>United States v. Frangenberg</u>, 15 F.3d 100, 103 (8th Cir. 1994) ("Further, Stubbe consulted a county attorney who offered what reasonably could be believed to be legally competent counsel on applying for the warrant.") (citing <u>United States v. Tagbering</u>, 985 F.2d 946, 951 (8th Cir. 1993) (taking into consideration in <u>Leon</u> analysis the fact that the county prosecutor reviewed the affidavit).

Finally, the court finds that the defendant's reliance on <u>Groh</u> is misplaced. The Court, in <u>Groh</u>, held that the warrant in that case was deficient because it was completely devoid of any description of the items to be seized, in direct violation of the Fourth Amendment's particularity requirement. <u>Groh</u>, 540 U.S. at 557. The Court, in <u>Groh</u>, emphasized that the warrant was plainly invalid because it violated the Fourth Amendment's requirement that the warrant "particularly" describe the place to be searched "and the persons or things to be seized." <u>Groh</u>, 540 U.S. at 557. The Court noted that the warrant did not "make what fairly could be characterized as a mere technical mistake." <u>Id.</u> at 558. Further, the affiant officer, in <u>Groh</u>, had every reason to know that the warrant was deficient in respect to the "items to be seized," as he was personally responsible for having created that deficiency when he erroneously described the defendant's house rather than the alleged stockpile of firearms in the place on the warrant designated for a description of the items to be seized. In contrast, this case concerns an inadvertent clerical oversight made by the issuing judge, which can "fairly . . . be characterized as a mere technical mistake." <u>See</u> <u>Id.</u> Based on the foregoing, the court finds that even if Officer Joecken had not been placed under oath, the <u>Leon</u> good faith exception to the exclusionary rule clearly applies.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[5] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's motion to suppress (docket number 16) be denied.

November 10, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[5]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.